Laura Sixkiller (Bar No. AZ-022014)
laura.sixkiller@us.dlapiper.com
Kate L. Benveniste (Bar No. AZ-027284)
kate.benveniste@us.dlapiper.com
**DLA PIPER LLP (US)**
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016-4232
Tel: 480.606.5100
Fax: 480.606.5101
DLAPHX@dlapiper.com

*Attorneys for Plaintiff*
*Stillwell Madison, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Stillwell Madison, LLC, a Delaware limited liability company,<br><br>  Plaintiff,<br><br>  v.<br><br>Girardi & Keese, a California general partnership d/b/a Girardi/Keese; Thomas V. Girardi, and Erika N. Girardi, husband and wife,<br><br>  Defendants. | CASE NO.<br><br>**COMPLAINT**<br><br>(Jury trial requested) |

Plaintiff Stillwell Madison, LLC ("Stillwell"), for its Complaint against Defendants Girardi & Keese ("the Firm"), Thomas V. Girardi, and Erika N. Girardi, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for breach of contract and fraud arising out of the Firm and Mr. Girardi's false representations that induced Stillwell to loan more than $5 million to the Firm, and the Firm's subsequent default of the loan agreement, which the Firm and Mr. Girardi pledged to repay but have not.

2. Despite acknowledgment of the debt and repeated promises of repayment, the Firm and Mr. Girardi's assurances that the defaults will be cured have proven empty. Instead, the Firm and Mr. Girardi have continued to evade their obligations under the loan and

subsequent forbearance agreement, forcing Stillwell to bring this action to enforce the terms of the parties' agreements.

3. Further, upon information and belief, Mr. Girardi intended to and utilized funds loaned by Stillwell, in whole or in part, for personal rather than business purposes, in abject violation of the terms of the loan.

4. Upon information and belief, the Firm and Mr. Girardi intended at the time the loan agreement was entered to use at least a portion of the loan funds to support Mr. Girardi and his wife's high-end lifestyle, but concealed this fact from Stillwell.

5. To make matters worse, Stillwell has discovered that the Firm and Mr. Girardi had recently been in default on another loan they received from a third party—a fact neither the Firm nor Mr. Girardi disclosed to Stillwell before seeking and securing a forbearance agreement from Stillwell.

6. As a result of the Firm and Mr. Girardi's breaches, Stillwell is seeking, among other relief, its actual, consequential, and liquidated damages, attorneys' fees and costs, and interest. Additionally, as a result of the Firm and Mr. Girardi's fraudulent conduct, Stillwell is also seeking punitive damages.

## THE PARTIES

7. Plaintiff Stillwell is a limited liability company formed in Delaware with its principal place of business in Maricopa County, Arizona. All of Stillwell's members are citizens of Arizona.

8. Upon information and belief, the Firm is a California general partnership doing business as Girardi/Keese in Beverly Hills, California.

9. Upon information and belief, Mr. Girardi is a citizen of California, residing in Pasadena, California. According to Mr. Girardi, he is the "100% owner" of the Firm with no general partners.

10. At all relevant times, Mr. Girardi was acting on behalf of himself, his marital community, and the Firm.

-2-

DLA Piper LLP (US)
Phoenix, Arizona

11. Defendant Erika N. Girardi is and was married to Mr. Girardi at all relevant times. Upon information and belief, Mrs. Girardi is a citizen of California, residing in Pasadena, California.

12. Mrs. Girardi is named herein based on her presumed community property interest in the Firm and the actions of her husband, Mr. Girardi, taken for the benefit of their marital community.

## JURISDICTION AND VENUE

13. The Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332, in that it is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

14. Venue is proper in this Court under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The Loan Agreement

15. The Firm is a personal injury law firm that touts more than $10 billion in verdicts and settlements.

16. According to Mr. Girardi's biography on the Firm's website, Mr. Girardi "has obtained numerous multi-million dollar verdicts and settlements, handling claims involving wrongful death, commercial litigation, products liability, bad faith insurance, and toxic torts."

17. Despite the ostensible success of the Firm and Mr. Girardi's law practice, Mr. Girardi sought a loan from Stillwell purportedly for the purpose of funding the Firm's operations.

18. On or about April 1, 2016, the Firm borrowed $5,110,440.38 from Stillwell pursuant to a written loan agreement (the "Loan Agreement"). **Exhibit 1**.

-3-

19. DGMGT, LLC, an Arizona limited liability company, agreed to act as the administrator between the parties with respect to the Loan Agreement (the "Administrator").

20. As repayment for the loan, the Firm assigned Stillwell the future proceeds from certain of the Firm's cases, which are listed in Exhibit B-1 to the Loan Agreement (the "Client Portfolio"). Ex. 1 at ¶ 2.

21. The Firm acknowledged that the loan was an advance on the proceeds the Firm anticipated receiving in connection with the Client Portfolio. Ex. 1 at ¶ 4.

22. As a condition to Stillwell's consent to enter the Loan Agreement, Mr. Girardi executed a personal declaration, dated March 31, 2016, avowing that in the event of default of the Loan Agreement, he personally "shall owe the amount which will make [Stillwell] whole under the terms of the [Loan] Agreement, plus an amount for [Stillwell's] attorney fees and cost[s] to obtain a judgment, interest on all amounts due subsequent to judgment and liquidated damages as provided in the [Loan] Agreement." Ex. 1 at Sch. G ("Personal Declaration").

23. The Firm additionally granted Stillwell a security interest in certain aspects of the Client Portfolio, as set forth in the Loan Agreement (the "Collateral"). Ex. 1 at ¶ 3.

24. The Firm was accordingly required to disclose any pre-existing interest in the Collateral, which was to be set forth on Exhibit B-2 to the Agreement (the "List of Secured Interests"). Mr. Girardi, on behalf of the Firm, verified that the List of Secured Interests was correct. Ex. 1 at Sch. B.

25. Among the creditors identified on the List of Secured Interests was third-party Law Finance Group ("LFG"). Mr. Girardi verified that LFG's only interest in the Collateral was in what was known as the "Shell Cases."

26. The Firm agreed to provide five-days written notice if: (1) the any creditor agreements identified in the List of Secured Interests are changed or modified; (2) the Firm did not pay any amount due under those agreements; or (3) the Firm committed an act that is a default under any of those agreements. Ex. 1 at ¶ 8(b).

-4-

27. In addition, the Firm agreed to provide certain financial statements and reports detailing the status of the Client Portfolio. Ex. 1 at ¶ 8(f), (h).

28. The Loan Agreement provides, in no less than four places, that the loan funds may be used for "business purposes" only. Ex. 1 at Recitals; ¶¶ 4, 8(j), 19.

### The Firm Defaults and Stilwell Agrees to Forbear

29. Upon information and belief, the Firm received certain proceeds from the Client Portfolio, but despite the prior assignment of said proceeds to Stillwell, the Firm failed to remit them.

30. Upon information and belief, Mr. Girardi re-directed all or part of the proceeds, to which Stillwell was contractually entitled, to himself and his wife in order to sustain their lavish lifestyle and maintain their glamorous public image.

31. To forestall Stillwell from enforcing its rights under the Loan Agreement, on August 28, 2018, Mr. Girardi proposed to the Administrator that he and the Firm would make monthly payments on the Loan in the amount of $500,000.00, plus monthly interest, with the first payment due October 1, 2018, and the loan being paid in full by September 2019. **Exhibit 2**.

32. On August 30, 2018, Stillwell accepted Mr. Girardi's proposal, resulting in an enforceable forbearance agreement (the "Forbearance Agreement"). **Exhibit 3**.

33. Unbeknownst to Stillwell, however, the Firm and Mr. Girardi had also defaulted on their loan with LFG and had entered a similar forbearance agreement just weeks before.

34. Pursuant to the Loan Agreement, the Firm is contractually obligated to provide Stillwell notice within five days if: (1) the any creditor agreements identified in the List of Secured Interests are changed or modified; (2) the Firm did not pay any amount due under those agreements; or (3) the Firm committed an act that is a default under any of those agreements

-5-

35. But the Firm did not provide any, let alone timely, notice of any of these defaults, or of the fact of the forbearance agreement with LFG, as required by the Loan Agreement.

36. Had Stillwell known this material fact—which the Firm was required to disclose pursuant to the terms of the Loan Agreement—it would not have agreed to forbear from enforcing its rights under the Loan Agreement.

37. Further, upon information and belief, at the time Mr. Girardi proposed the terms of the Forbearance Agreement, neither he nor the Firm intended to make the promised payments. Rather, upon information and belief, Mr. Girardi proposed and entered into the Forbearance Agreement for the sole purpose of delaying Stillwell from taking legal against him and his Firm without any return performance.

38. Consistent with the Firm and Mr. Girardi's apparent intention, neither caused the October 1, 2018 payment to be made in accordance with the Forbearance Agreement, resulting in a breach of the same.

39. On December 2, 2018, Mr. Girardi contacted the Administrator with yet another proposal and offered to make three payments of $500,000.00 per month between December 2018 and February 2019, with the loan balance to be paid in full by March 17, 2019.

40. Mr. Girardi caused the full December 2018 payment to be made to Stillwell, but caused only $250,000 to be paid in January 2019—$250,000 less than what was promised.

41. As of the date of this Complaint, despite demand, neither the Firm nor Mr. Girardi have caused any further payments to be made to Stillwell.

42. On February 13, 2019, Stillwell requested copies of certain documents and financial records from the Firm pursuant to Paragraph 8(b) and (h) of the original Loan Agreement. As a courtesy to the Firm, the contractual time period to respond to the requests was extended until February 27, 2019. The Firm did not respond to Stillwell's request.

DLA Piper LLP (US)
Phoenix, Arizona

43. On March 25, 2019, the Firm and Mr. Girardi were provided written notice of this additional material default of the Loan Agreement and given until April 5, 2019 to cure such default. The Firm and Mr. Girardi did not respond.

44. Since that time, Mr. Girardi has approached the Administrator about the possibility of another forbearance, but Mr. Girardi has never followed through on any of his proposals—reinforcing the indication that he (nor the Firm) has, and continues to not have, any intention of repaying the loan balance.

45. As of May 1, 2019, the Firm and Mr. Girardi owe Stillwell at least $3,454,804.00, exclusive of interest, administrative expenses, and other charges, and remain in default.

## FIRST CAUSE OF ACTION

### Breach of Contract (Girardi & Keese)

46. Stillwell incorporates paragraphs 1 through 45 of its Complaint, as if fully set forth herein.

47. The Loan Agreement and Forbearance Agreement constitute valid and enforceable written contracts between Stillwell and the Firm.

48. Stillwell substantially performed its obligations under the Loan Agreement and the Forbearance Agreement.

49. The Firm breached the Loan Agreement and the Forbearance Agreement by, among other things, failing to make required payments; failing to disclose requested financial statements; failing to provide notice of the defaults and forbearance of its loan from LFG; and, upon information and belief, using the loan proceeds provided by Stillwell for purposes other than the business of the Firm.

50. As a direct and proximate result of the Firm's breaches, Stillwell has been damaged in an amount to be proven at trial.

DLA Piper LLP (US)
Phoenix, Arizona

## SECOND CAUSE OF ACTION

### Breach of Contract (Thomas V. Girardi)

51. Stillwell incorporates paragraphs 1 through 50 of its Complaint, as if fully set forth herein.

52. Mr. Girardi's Personal Declaration attached to the Loan Agreement constitutes a valid and enforceable written contract between Stillwell and Mr. Girardi whereby Mr. Girardi agreed to be individually liable for the entire amount owed under the Loan Agreement, plus attorneys' fees and costs, interest, and liquidated damages as provided in the Loan Agreement.

53. In addition, the Forbearance Agreement constitutes a valid and enforceable written contract between Stillwell and Mr. Girardi, whereby Mr. Girardi agreed to make monthly payments of $500,000.00 per month to Stillwell beginning on October 1, 2018.

54. Stillwell substantially performed its obligations under the Personal Declaration and Forbearance Agreement.

55. Mr. Girardi breached his promises under the Personal Declaration and Forbearance Agreement by, despite demand, failing to pay the amounts owed under the Loan Agreement sufficient to make Stilwell whole, and by failing to make the promised monthly payments under the Forbearance Agreement.

56. As a direct and proximate result of Mr. Girardi's breaches, Stillwell has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### Fraud (Girardi & Keese and Thomas V. Girardi)

57. The Firm, through Mr. Girardi in his capacity as its sole owner, and Mr. Girardi, in his individual capacity, made certain representations to Stillwell, including but not limited to, that Firm would use the loan funds for business purposes only, and that they intended to make the promised payments under the Forbearance Agreement.

DLA Piper LLP (US)
Phoenix, Arizona

58. However, upon information and belief, the foregoing representations, which were made with respect to the Firm and Mr. Girardi's financial condition, were false when made.

59. Upon information and belief, the Firm and Mr. Girardi knew the representations made to Stillwell were false.

60. Upon information and belief, the Firm and Mr. Girardi deceptively intended Stillwell to rely and act upon the foregoing representations and omissions in order to obtain a loan from Stillwell for more than $5,000,000.00, and then transfer proceeds, in whole or in part, to Mr. and Mrs. Girardi for their personal use instead of business purposes.

61. Upon information and belief, the Firm and Mr. Girardi also deceptively intended Stillwell to rely and act upon the foregoing representations and omissions in order to obtain a Forbearance Agreement that they never intended to honor.

62. The Firm and Mr. Girardi's representations were material to the Loan Agreement because Stillwell would not have provided the Loan had it known that Defendants were going to use the Loan proceeds to, upon information and belief, support Mr. and Mrs. Girardi's high-end lifestyle.

63. The Firm and Mr. Girardi's representations and omissions were material to the Forbearance Agreement because Stillwell would not have agreed to forbear from enforcing its rights under the Loan Agreement had it known (1) the Firm and Girardi had defaulted on their loan from LFG and (2) the Firm nor Mr. Girardi intended to make the promised payments under the Forbearance Agreement.

64. The Firm and Mr. Girardi's conduct was intentional and willfully indifferent.

65. Stillwell relied on the truth of the Firm and Mr. Girardi's representations in entering the Loan Agreement and the Forbearance Agreement.

66. Stillwell's reliance on the Firm and Mr. Girardi's representations was reasonable and justified under the circumstances.

DLA Piper LLP (US)
Phoenix, Arizona

67. As a result of the Firm and Mr. Girardi's representations, Stillwell has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Stillwell respectfully prays for the following relief against Defendants:

A. All actual and consequential damages in an amount to be proven at trial;

B. For liquidated damages in the amount of 20% of total amounts due under Schedule A to the Loan Agreement, pursuant to ¶ 14 of the Loan Agreement;

C. For punitive damages;

D. For Stillwell's attorneys' fees and costs incurred herein pursuant to A.R.S. §§ 12-341 and -341.01, and the terms of the parties' agreements;

E. For pre- and post-judgment interest at the legal rate from the date of judgment until paid in full; and

F. For any other relief the Court deems just.

Dated: May 24, 2019            **DLA PIPER LLP (US)**

By: *s/ Laura Sixkiller*
    LAURA SIXKILLER
    laura.sixkiller@us.dlapiper.com
    KATE L. BENVENISTE
    kate.benveniste@us.dlapiper.com
    2525 East Camelback Road, Suite 1000
    Phoenix, Arizona 85016-4232
    Tel: 480.606.5100
    Fax: 480.606.5101

    *Attorneys for Plaintiff
    Stillwell Madison, LLC*

DLA Piper LLP (US)
Phoenix, Arizona