Laura Sixkiller (Bar No. AZ-022014)
laura.sixkiller@us.dlapiper.com
Kate L. Benveniste (Bar No. AZ-027284)
kate.benveniste@us.dlapiper.com
David Onuschak (Bar No. AZ-033405)
david.onuschak@us.dlapiper.com
**DLA PIPER LLP (US)**
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016-4232
Tel: 480.606.5100
Fax: 480.606.5101
dlaphx@us.dlapiper.com

*Attorneys for Plaintiff*
*Stillwell Madison, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Stillwell Madison, LLC, | CASE NO. CV-19-03563-PHX-SPL |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION** |
| Girardi & Keese, et al., | |
| Defendants. | **(Oral Argument Requested)** |

Defendants' Motion to Dismiss and Compel Arbitration (Doc. 9) (the "Motion") should be denied for at least two reasons. First, Defendants' counsel is not admitted to the State Bar of Arizona, nor has Defendants' counsel applied for admission to appear pro hac vice before this Court. Defendants' counsel is therefore not authorized to practice law in the District of Arizona and the Motion is a nullity. Second, the Motion fails on the merits because the Complaint (Doc. 1) asserts claims that are—quite plainly—not subject to arbitration. Specifically, the Complaint asserts claims for breach of certain written agreements—a forbearance agreement and a personal declaration executed by Defendant Thomas V. Girardi in his individual capacity—neither of which contain an arbitration provision and are distinct from the original loan agreement between Plaintiff Stillwell Madison LLC ("Stillwell") and Defendant law firm Girardi & Keese ("Girardi Keese"). The Motion ignores these stand-

alone agreements and the non-arbitrable claims arising ***from those agreements***, including the fraud claims against Defendants.  Further, Mr. Girardi is not a party to the original loan agreement, and thus, he cannot invoke the arbitration clause in that agreement to compel arbitration of claims against him individually.

For these reasons, as discussed further below, Defendants' Motion must be denied. This Response is supported by the following Memorandum of Points and Authorities and the germane Court record.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. DEFENDANTS' MOTION IS A NULLITY DUE TO DEFENSE COUNSEL'S UNAUTHORIZED PRACTICE OF LAW IN THIS COURT**

As a threshold matter, the Court need not reach the merits of Defendants' Motion because defense counsel is apparently not a member of the State Bar of Arizona, and at no point in time prior to the filing of this response has defense counsel sought admission pro hac vice in this case.  "When the lawyer is not a member of the State Bar of Arizona, out-of-district counsel's appearance pro hac vice is not a right but a privilege, especially in a civil case." *Kaufman v. Jesser*, No. CV-12-459-PHX-LOA, 2012 WL 4478807, at *2 (D. Ariz. Sept. 28, 2012) (citations and quotations omitted).

The rules of admission for an out-of-state attorney to be admitted to practice in the District of Arizona are clear: LRCiv. 83.1(b)(2) mandates that "[a]n attorney who is admitted to practice in another U.S. District Court, and who has been retained to appear in this Court may, ***upon written application and in the discretion of the Court***, be permitted to appear and participate in a particular case." (Emphases added.)  Despite defense counsel's (and his clients') apparent experience, they have failed to undertake this critical step.

It is well established that papers filed on behalf a party by an attorney not admitted pro hac vice are a nullity. *See Clarendon Am. Ins. Co. v. Hickok*, 257 S.W.3d 43, 47 (Ark. 2007) ("***We have repeatedly held that when a person not licensed to practice law in this state attempts to represent the interests of another by submitting himself or herself to the jurisdiction of a court, the pleadings filed by that person are rendered a nullity.***"

(Emphases added.)); *Erbacci, Cerone, & Moriarty v. United States*, 939 F. Supp. 1045, 1052 (S.D.N.Y.1996) (denying motion to dismiss because it was brought by an attorney not admitted to practice in the subject district); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, No. 1:14-CV-03899-SCJ, 2015 WL 13687122, at *3 (N.D. Ga. June 17, 2015) (holding that because Plaintiff's counsel failed to follow local rules for admission pro hac vice, "the Court will not consider either response Plaintiff filed in opposition to Defendants' motion to dismiss because both Plaintiff and his attorney have failed to comply with the Local Rules in making these filings before this Court"); *Fischer v. Talco Trucking*, Inc., No. 07-CV-4564 JS ARL, 2008 WL 4415280, at *8 (E.D.N.Y. Sept. 24, 2008) ("Stith should be aware that an answer cannot be accepted in this Court by an attorney not admitted to practice in the United States District Court for the Eastern District of New York, regardless of whether that attorney is admitted to the New York State Bar."); *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 362 (S.D.N.Y. 2005) ("Moreover, because [counsel] is not admitted to practice in the Southern District of New York, the complaint could not have been filed without [the] signature of an attorney admitted in the Southern District.").

It is within the province of the Court to impose sanctions for violations of LRCiv. 83.1, including but not limited to "an order striking, in whole or in part, pleadings, motions or memoranda filed in support or opposition thereto." LRCiv. 83.1(f)(2)(E).

Because Defendants' counsel has apparently engaged in the unauthorized practice of law, Defendants' Motion is of no effect and must be denied as a nullity.

**II.  THE COMPLAINT ASSERTS CLAIMS THAT ARE NOT SUBJECT TO ARBITRATION**

**A.  Relevant Background**

Although the facts are relatively straightforward, to put the issues into context, some discussion of the factual background is appropriate.

In April 2016, Stillwell loaned defendant law firm Girardi Keese more than $5 million with the understanding that the monies would be used to fund the firm's operations.

(Doc. 1 ¶ 18.) As repayment for the loan, Girardi Keese assigned Stillwell the future proceeds from certain of the firm's cases (the "Client Portfolio"). (*Id.* ¶ 20.)

The loan was documented in a written contract between the two parties (the "Loan Agreement"). (*Id.* at Ex. 1.) The Loan Agreement contains an arbitration provision that requires the parties "to th[e] [Loan] Agreement"—and only the parties to the Loan Agreement—to arbitrate "Disputed Claims." (Ex. 1 to Compl. at ¶ 15.) Disputed Claims is narrowly defined in the Loan Agreement to mean "all claims, counterclaims, demands, causes of action, or disputes **_under this agreement_** or the alleged breach of any provision **_hereof_**."[1] (Emphases added.)

In addition to the Loan Agreement, defendant Thomas Girardi executed a separate agreement in his personal capacity (the "Personal Agreement") to repay the loan in the event of Girardi Keese's default, "plus an amount for Stillwell's attorney fees and costs "**_to obtain a judgment_**" against Mr. Girardi if necessary. (Doc. 1-2 at 89 (emphases added).) The Personal Agreement does not contain an arbitration provision. (*Id.*)

Girardi Keese ultimately defaulted on the Loan Agreement. (Doc. 1 ¶¶ 29-30.) Upon information and belief, rather than use the Client Portfolio proceeds Girardi and Keese received to repay the loan, Mr. Girardi re-directed all or part of the proceeds to himself and his wife. (*Id.* ¶ 30.) To forestall Stillwell from enforcing its rights under the Loan Agreement, Mr. Girardi proposed a new agreement: Mr. Girardi offered, on behalf of himself and Girardi Keese, to make monthly payments to Stillwell of $500,000.00, plus interest, and repay the loan paid in full by September 2019. (Doc. 1-3.) Stillwell accepted the offer. (Doc. 1-4.) Unbeknownst to Stillwell at the time, however, Girardi Keese was then in default on a different loan made by third party, Law Finance Group.[2] (Doc. 1 ¶ 33.) The new agreement between Stillwell, Mr. Girardi, and Girardi Keese (the "Forbearance Agreement") does not contain an arbitration provision. (Docs. 1-3, 1-4.)

---

[1] Notably, Defendants have not "disputed" the merits of any of Stillwell's contract claims.

[2] Stillwell understands that a judgment has since been entered in favor of Law Finance Group and against Mr. Girardi and Girardi Keese in Los Angeles County Superior Court. *Law Finance Group v. Girardi & Keese et al.*, No. 19STCV01455 (July 30, 2019).

-4-

Mr. Girardi and Girardi Keese immediately breached the Forbearance Agreement when Defendants failed to make the promised monthly payments (Doc. 1 ¶ 38.) Stillwell contends that at the time Mr. Girardi proposed the terms of the Forbearance Agreement, neither Mr. Girardi nor Girardi Keese intended to actually make the payments, and instead entered into the Forbearance Agreement to delay legal action against them and defraud Stillwell. (*Id.* ¶ 37.) This action followed after months of extensive efforts to secure Defendants' performance.

### B. The Claims Against Girardi Keese Are Not Subject to Arbitration Because the Forbearance Agreement Omits Any Agreement to Arbitrate

Notwithstanding defense counsel's unauthorized practice of law, Defendants' confused Motion fails to present any valid ground requiring the Court to compel arbitration of this action.

Defendants set up a strawman argument that Girardi Keese did not waive its right to seek arbitration and inexplicably state, "Plaintiff cites no case holding that waiver of a right to arbitrate under the FAA is governed by state-law principles under § 2 of the FAA rather than by federal-law principles under § 3." But Plaintiff has not before and is not now asserting that Girardi Keese waived the right to arbitrate.[3] To the contrary, it is Stillwell's position that the Forbearance Agreement is a stand-alone agreement containing no arbitration clause, and therefore claims for breach of that agreement (including by Mr. Girardi, as discussed below) are not subject to arbitration. (*See* Docs. 1-3, 1-4.)

Defendants' waiver argument attempts to muddy the water and omits any recognition or discussion of arbitrability in the face of a distinct contract. Courts have refused to find that a dispute involves waiver of an arbitration clause in an original contract where a subsequent contract contains no such clause. *See, e.g.*, *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1119 (11th Cir. 2014) ("The obvious response is that this case does not involve

---

[3] Further highlighting out-of-state counsel's lack of familiarity with this Court's Local Rules, Defendants might have better understood Stillwell's position had Defendants engaged in a meaningful meet and confer rather than send a perfunctory email asking Stillwell to dismiss the case.

1  waiver of an arbitration provision at all; rather, it involves superseding the entire agreement
2  containing an arbitration provision and replacing that provision with silence."); *see also*
3  *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 524–25 (2d Cir
4  2011); *Dottore v. Huntington Nat'l Bank*, No. 1:09–cv2636, 2010 WL 3861010, at *4 (N.D.
5  Ohio Sept. 28, 2010), *aff'd* 480 Fed. Appx. 351 (6th Cir. 2012).  In such cases, the issue of
6  whether a prior arbitration clause still applies is determined by state contract law, ***not the***
7  ***FAA's presumption of arbitrability***.  *See Dasher*, 745 F.3d at 1116.

8  Under Arizona law, "[t]he lack of an arbitration clause in a subsequent agreement
9  that is independent and subject to individual interpretation means disputes over such an
10 agreement are not subject to arbitration." *Converged IT, L.L.C. v. Bus. Dev. Sols., Inc.*, No.
11 CV 05-2489 PHX ECV, 2006 WL 322468, at *1 (D. Ariz. Feb. 10, 2006); *c.f. Adelman v.*
12 *Christy,* 90 F. Supp.2d 1034, 1039 (D. Ariz. 2000) ("Where the entire subject-matter is
13 covered, and there is nothing on the face of the second agreement to show that it is intended
14 to be supplemental to the original agreement, it supersedes and rescinds the original, not as
15 a question of intention, but by operation of law, as a result of steps taken by the parties.");
16 *Demasse v. ITT Corp.*, 984 P.2d 1138, 1146 (Ariz. 1999) (en banc) ("There is no doubt that
17 the parties to a contract may by their mutual agreement accept the substitution of a new
18 contract for the old one with the intent to extinguish the obligation of the old
19 contract . . . .")).

20 To the extent Defendants attempt to argue that the Forbearance Agreement was an
21 accord of the Loan Agreement, not so.  Unlike an accord, where a party agrees to accept a
22 substitute performance, Stillwell did not agree to accept reduced payments or a reduced loan
23 amount. *See Adelman*, 90 F. Supp.2d at 1039 (noting that if "parties intend that the promises
24 to undertake new contractual arrangements themselves satisfy the original obligations, the
25 original duty is extinguished as soon as the new contract is entered into"). Defendants were
26 still expected to pay the full amount due, but under new obligations created in the
27 Forbearance Agreement requiring a set repayment schedule, with the loan maturing in
28 September 2019.  (Docs. 1-3, 1-4.)

At in irreducible minimum, the Forbearance Agreement is a separately enforceable agreement that omits any requirement to arbitrate claims for breach of *that agreement*. Given the foregoing, Defendants have failed to show that Stillwell's claim against Girardi Keese for breach of the Forbearance Agreement are subject to arbitration.

### C. The Claims Against Thomas Girardi Are Not Subject to Arbitration Because He Is Not a Party to Any Arbitration Agreement

For the same reasons that Stillwell's claim against Girardi Keese for breach of the Forbearance Agreement is not arbitrable, the claim against Thomas Girardi for breach of the Forbearance Agreement is also not arbitrable.

Similarly, Stillwell's claim against Thomas Girardi for his breach of the Personal Agreement is not subject to arbitration. Like the Forbearance Agreement, the Personal Agreement is a separately enforceable contract—***a contract which involves different parties who never agreed to arbitrate any claims between them***. (*See* Doc. 1-2 at 89.) Indeed, the Personal Agreement contemplates Stilwell seeking a "judgment" against Mr. Girardi. It is axiomatic that judgments are entered by courts, not by arbitrators. As Mr. Girardi was not a party to the Loan Agreement, he has no standing to seek enforcement of the arbitration clause contained therein. *See Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993) "Thus, however favored by the courts and Congress, arbitration is a contractual right that may not be enforced by someone who is not a party to the agreement and who does not otherwise have the right to compel arbitration." *Converged IT, LLC*, 2006 WL322468, at *1.

The Ninth Circuit's holding in *Britton* applies with equal force to the fraud claims against Mr. Girardi. *See Britton*, 4 F.3d at 744. Because he is a non-party to the Loan Agreement, Mr. Girardi has no standing to compel arbitration of tort claims against him personally. As stated above, Mr. Girardi cannot graft the arbitration provision from the Loan Agreement into his Personal Agreement. *Id.*; *see also* Ex. 1 to Doc. 1 at ¶ 15(g) ("Arbitration can only decide ***the parties'*** claims and may ***not*** consolidate or join the claims of other persons that may have similar claims." (Emphasis added.) Even if he could, however, the

scope of the Loan Agreement's arbitration provision is limited to claims "under th[e] [Loan] Agreement or the alleged breach of any provision [t]hereof." (Ex. 1 to Doc. 1 at ¶ 15.) Stillwell's fraud claim against Mr. Girardi is not "under" the Loan Agreement. Rather, it arises, at least in part, from Mr. Girardi's misrepresentations made in connection with the Forbearance Agreement. (*See* Doc. 1 ¶¶ 57-59, 61, 63.) "[N]othing in the [Federal Arbitration Act] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Converged*, 2006 WL322468, at *1. Thus, Mr. Girardi—a non-party to the Loan Agreement—may not demand arbitration of claims against him, and particularly not fraud claims that are outside the scope of the Loan Agreement's limited arbitration provision.

### III. THE COURT SHOULD STAY ANY ARBITRABLE CLAIMS

To the extent the Court finds that any portion of Stillwell's claims are subject to arbitration, complaints that encompass both arbitrable and non-arbitrable claims do not require dismissal of the entire action. In the Ninth Circuit, the preference is to proceed with the non-arbitrable claims and stay the arbitrable claims. *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002). There is no just reason for this Court to depart from that practice. *See id.*; *accord Liskey v. Oppenheimer & Co., Inc.*, 717 F.2d 314 (6th Cir. 1983) (where complaint presented both arbitrable and nonarbitrable claims, arbitrable claims could be severed and arbitrated following judicial resolution of nonarbitrable claims); *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166 (5th Cir. 1979) (noting that courts should stay proceedings as to arbitrable claims); *Fox v. Merrill Lynch & Co., Inc.*, 453 F. Supp. 561 (S.D.N.Y. 1978) ("If it is not practical to separate a party's arbitrable and nonarbitrable claims, it may be appropriate to deny arbitration of any of the claims, or to defer arbitration until after adjudication of the nonarbitrable disputes.").

### IV. CONCLUSION

Consideration of Defendants' Motion is inappropriate because it would allow Defendants' California counsel to succeed in engaging in the unauthorized practice of law. The Court should, therefore, not even reach the merits (or lack thereof) of Defendants'

DLA PIPER LLP (US)
PHOENIX, ARIZONA

-8-

Motion due to counsel's violation of this Court's Local Rules.  Even if, *in arguendo*, defense counsel were admitted to practice in this Court, the controlling law supports denial of the Motion.   Both the Forbearance Agreement and the Personal Agreement contain no arbitration clause whatsoever. Further, Stillwell has fraud claims that came to exist distinct from and after the Loan Agreement.   For all the reasons stated in this Response, Stilwell respectfully requests the Court deny Defendants' Motion in its entirety.

Dated: August 21, 2019          **DLA PIPER LLP (US)**

By: *s/ Laura Sixkiller*
LAURA SIXKILLER
laura.sixkiller@us.dlapiper.com
KATE L. BENVENISTE
kate.benvensite@us.dlapiper.com
DAVID ONUSCHAK
david.onuschak@us.dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016-4232
Tel:  480.606.5100
Fax: 480.606.5101

*Attorneys for Plaintiff*
*Stillwell Madison, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2019, I electronically filed the attached document to the Clerk's Office using the CM/ECF System, and a copy will be electronically served on CM/ECF registrants in this action.

A copy of the attached document was also served via email on:

Robert C. Baker, CA Bar #49255
BAKER, KEENER & NAHRA, LLP
633 West 5th Street, Suite 5500
Los Angeles, California 90071
rbaker@bknlawyers.com

*Counsel for Defendants*

*s/ Kate L. Benveniste*

DLA Piper LLP (US)
Phoenix, Arizona